The jurors for the State upon their oath present, that by an act of the General Assembly entitled "An act to amend an act entitled "An act for the relief of the officers and soldiers of the continental line, and for other purposes,'" passed at Hillsborough on the eighteenth day of April, in the year of our Lord one thousand seven hundred and eighty-three, the Secretary of State was directed to issue a warrant of survey to each and every person entitled to land by virtue of the said act, entitled "An act for the relief of the officers and soldiers of the continental line, and for other purposes therein mentioned," for such quantities of land within the limits of the land reserved by the act last mentioned for the said (266) officers and soldiers, as he, she, or they, by the said act, should be entitled to; which warrant should be directed to Col. Martin Armstrong, who was appointed by the act first mentioned surveyor for that purpose, and was authorized and required to execute and return the same *Page 227 
into the Secretary's office within the same time and in the same manner as is required in other cases; and the said Secretary of State was required by the said act first mentioned to make out grants for all surveys which should be thus returned to his office, which grants should be authenticated by the Governor, countersigned by the said Secretary, and recorded in his office.
The jurors aforesaid, upon their oath aforesaid, do further present that James Glasgow, of the county of Greene, Esquire, on the seventh day of January, in the year of our Lord one thousand seven hundred and eighty-six, and in the tenth year of the independence of the said State, at the said county of Greene, within the jurisdiction of their honorable court, then and there being Secretary of State of the said State of North Carolina, and being then and there in the exercise of the said office, and being empowered and intrusted by law with the issuing of land warrants as aforesaid, unlawfully, wickedly, and fraudulently, and in violation of the duties of his said office, did make out a certain fraudulent writing, purporting to be a duplicate military land warrant in favor of the heirs of Elijah Roberts, a private in the line of this State, for six hundred and forty acres of land, within the limits of the land reserved for the officers and soldiers as aforesaid, and he, the said James Glasgow, did then and there sign his name to the said writing as Secretary of State, and issued the same from his said office, as a true, good, and lawful military land warrant; when in truth and in fact he, the said James Glasgow, then and there well knew that an original warrant had been previously made out and issued by him, the said James Glasgow, as Secretary of State aforesaid, to the said heirs of the said Elijah Roberts, for his right as a private in the said line; and he, the same James, had no right nor authority by law to make out or issue any other such warrant to such heirs for said right, to the great damage of (267) the State, etc.
The jurors aforesaid, on their oath aforesaid, do further present, that a certain James Mulherrin afterwards, to wit, on the first day of January, in the year of our Lord one thousand seven hundred and eighty-nine, and in the thirteenth year of the independence of the State, under color of a certain unlawful and fraudulent writing, purporting to be a duplicate military land warrant, and to be issued on the seventh day of January, in the said year one thousand seven hundred and eighty-six, by the said James Glasgow as Secretary of State, in favor of the heirs of Elijah Roberts, as private in the line of this State, for six hundred and forty acres of land within the limits of the land reserved for the said officers and soldiers aforesaid, did illegally and fraudulently procure and cause to be made in favor of him, the said James Mulherrin, a certain *Page 228 
survey of six hundred and forty acres of land in Davidson County, on Hickman Creek, etc. (the course of the land), and did afterwards, to wit, on the first day of May, of the said year one thousand seven hundred and eighty-nine, fraudulently return the said survey, together with the said last mentioned illegal and fraudulent writing, purporting as aforesaid into the said office of Secretary of State, in order to obtain a grant from the State to him, the said James Mulherrin, for the said land last mentioned — he, the said James Mulherrin, pretending that a certain Elijah Robertson had assigned to him, the said James Mulherrin, the said last mentioned illegal and fraudulent writing, purporting as aforesaid — so as to entitle him, the said James Mulherrin, to obtain the said grant in his own name, although he, the said James Mulherrin, did not produce to the said Secretary of State any legal evidence to prove that he, the said Elijah Robertson, was entitled by law to the military land warrant of the heirs of the said Elijah Roberts, so that he, the said Elijah Robertson, had legally assigned the same to him, the said James Mulherrin, so as to entitle the said James Mulherrin to obtain a grant for the said land last mentioned to himself as aforesaid.
(268) And the jurors aforesaid, upon their oath aforesaid, do further present that the said James Glasgow, on the eighteenth day of May, in the year of our Lord one thousand seven hundred and eighty-nine, and in the thirteenth year of the independence of the State, at the said county of Greene, within the jurisdiction of this honorable Court, then and there being Secretary of State, and in the exercise of the same office, and being intrusted by law with the making out grants as aforesaid, well knowing that the said writing purporting to be a duplicate military land warrant was illegal and fraudulent; an original warrant having previously been issued for the same right by him, the said James Glasgow, as Secretary of State as aforesaid; and that the said James Mulherrin had not produced to him, the said James Glasgow, as Secretary aforesaid, any legal evidence to prove that the said Elijah Robertson was entitled by law to the military land warrant of the said heirs of the said Elijah Roberts, deceased, or that the said Elijah Robertson had legally assigned the same to him, the said James Mulherrin, so as to entitle the said James Mulherrin to receive a grant to himself for the said land last mentioned, unlawfully, fraudulently, and wickedly, and in violation of the duties of his said office, did make out a certain fraudulent grant from the State to him, the said James Mulherrin, for the said six hundred and forty acres of land, situated and bounded as aforesaid, and did then and there cause the said grant to be authenticated by the Governor, and did countersign the same himself as Secretary of State, and recorded it in his said office, to the great injury of the State, etc. *Page 229 
The jurors aforesaid, upon their oath aforesaid, do further present, that the said James Mulherrin afterwards, to wit, on the first day of February, in the year of our Lord one thousand seven hundred and ninety-three, and in the seventeenth year of the independence of the State, under color of a certain illegal and fraudulent writing, purporting to be a duplicate military land warrant, and to be issued on the said seventh day of January, in the said year 1786, by the said James Glasgow, as Secretary of State as aforesaid, in favor of the heirs of Elijah Roberts, a private in the line of this State, for six hundred (269) and forty acres of land, within the limits of the land reserved for the officers and soldiers aforesaid, did illegally and fraudulently procure, and cause to be made in favor of him, the said James Mulherrin, a certain other survey, for six hundred and forty acres of land lying on Mill Creek, on the south side of Cumberland River, and bounded as follows: Beginning etc. (corners of land), and did afterwards, to wit, on the eleventh day of May, in the said year of our Lord one thousand seven hundred and ninety-three, fraudulently return the said survey, together with the said last mentioned illegal and fraudulent writing, purporting as aforesaid into the said office of Secretary of State, in order to obtain a grant from the State to himself for the said land last mentioned, he, the said James Mulherrin, pretending that a certain Elijah Robertson had assigned to him, the said James, the said illegal and fraudulent warrant, so as to entitle him, the said James Mulherrin, to obtain the grant in his own name, although he, the said James Mulherrin, did not produce to the said Secretary of State any legal evidence to show that he, the said Elijah Robertson, was entitled by law to the military land warrant of the said heirs of the said Elijah Roberts, deceased, or that the said Elijah Robertson had legally assigned the same to him, the said James Mulherrin, so as to entitle the said James Mulherrin to obtain a grant for the land last mentioned to himself, as aforesaid, and although he, the said James Mulherrin, had previously, to wit, on the eighteenth day of May, 1789, aforesaid, obtained a grant from the State to himself, for another tract of six hundred and forty acres of land, before that time surveyed, in virtue of the said last mentioned illegal and fraudulent writing, purporting to be a military land warrant.
And the jurors aforesaid, on their oath aforesaid, do further present, that the said James Glasgow, on the seventh day of January, in the year of our Lord one thousand seven hundred and ninety-four, and in the eighteenth year of the independence of the State, at the said county of Greene, within the jurisdiction of this Court, then and there being Secretary of State as aforesaid, and in the exercise of the same (270) *Page 230 
office, and being intrusted and empowered by law with the making out grants as aforesaid, well knowing that the said last mentioned warrant as aforesaid was illegal and fraudulent as aforesaid, an original land warrant having been previously issued for the same right by him, the said James Glasgow, as Secretary aforesaid; and that the said James Mulherrin had not produced to him, the said James Glasgow, any legal evidence to prove that the said Elijah Robertson was entitled by law to the said military land warrant of the said heirs of the said Elijah Roberts, deceased, or that he, the said Elijah Robertson, had legally assigned the same to the said James Mulherrin, so as to entitle him, the said James Mulherrin, to obtain a grant to himself for the said land last described, and also then and there well knowing that he, the said James Mulherrin, had previously obtained a grant from the State to himself for another tract of land in virtue of the said last mentioned illegal and fraudulent writing purporting, as aforesaid, unlawfully, fraudulently, and wickedly, and in violation of the duties of his office, did make out a certain false and fraudulent grant from the State to the said James Mulherrin for the said six hundred and forty acres, situated and bounded as last aforesaid, and did then and there cause the said grant to be authenticated by the Governor, and did countersign the same himself, as Secretary aforesaid, and recorded it in his office, to the great detriment of the State, to the evil and most pernicious example of all others in the like case offending, and against the peace and dignity of the State.
To this indictment he pleaded "not guilty," and a jury being impaneled and sworn to try the issue between the State and the said James Glasgow, found him guilty in manner and form as he was charged in the bill of indictment.
The counsel for the defendant moved for a new trial upon several grounds, but relied chiefly on the ground of the verdict being contrary to the evidence. The Court declared they were satisfied with the verdict, and refused to grant a new trial. The Attorney-General then (271) prayed for judgment against the defendant, when Haywood, for the defendant, moved in arrest of judgment and filed his reasons, to wit:
1. The caption does not state any legal authority in this Court to take the said indictment; the commission is stated to be made to the Judges to inquire by the oaths of good and lawful men of the counties of _____________, and there is no law of this State which authorizes an inquiry otherwise than by the oaths of freeholders.
2. The caption does not state the indictment to have been found by the oaths of freeholders. *Page 231 
3. There is no such commission as that stated in the caption; the commission, by virtue whereof this Court sits, is a commission to inquire of the offenses committed in the office of the Secretary of State, or in the office of Martin Armstrong, or in the office of John Armstrong, in, etc., but the commission described in the caption is to inquire of offenses in the two former offices only.
4. The commission, by virtue whereof this Court sits, is to inquire by the oaths of freeholders, whereas the commission, by virtue whereof the indictment is stated so to be taken, is to inquire by the oaths of good and lawful men only.
5. The several offenses in the indictment mentioned are supposed to have been committed on the several times therein mentioned at the county of Greene, within the jurisdiction of this Court, not stating the said place to be within any of "the districts of the "State, whereby the Court might see that the said offenses were committed within the extent of their jurisdiction; and, in fact, at those several times there was no such county as the county of Greene within any district.
In the first count of the said indictment it is not stated otherwise than by implication that any original warrant had issued before the issuing of the duplicate therein mentioned.
The original warrant, so stated by implication, is not described nor set forth so as to show to the Court that the duplicate therein mentioned is a copy thereof, and for the same lands and number of acres, and in favor of the same person and for the same claim the duplicate is.
It is not stated in the said first count that any injury did (272) actually ensue the issuing the said duplicate.
The original warrant, stated by implication, is stated to have been issued to the heirs for the right of the deceased, which is repugnant.
The second count states that the said James Glasgow well knew that the said warrant had been legally assigned to the said Mulherrin, so as to entitle him to receive a grant; all that part of the sentence after the and/or being governed by the antecedent words "well knowing," and not by the antecedent words "had not"; and therefore it was in law no crime to issue the said grant to Mulherrin, and yet in contradiction to this plain consequence, it states the said grant to have been issued unlawfully, fraudulently, and wickedly.
It is not alleged in the second count that Mulherrin did not produce evidence of his right, but only said although he did not, which is not any positive averment.
It states the issuing a grant, knowing that one original warrant had issued, not averring that a grant had issued upon the original, or that it was intended to issue upon the same, or that the original was in being. *Page 232 
In the last count it is not stated that a grant had issued upon the same duplicate that any former grant had issued upon, but only that it issued upon the duplicate mentioned in the last count.
In the last count it is not averred that a grant issued upon the duplicate therein mentioned, previous to the issuing the grant therein stated to be issued on the seventh day of January, one thousand seven hundred and ninety-four, but only the well knowing that Mulherrin had previously obtained a grant then issued, that stated in the said count, which is not any positive averment that two grants issued thereon.
The fraud therein stated is supposed to be committed against the State of North Carolina, when at the same time it appears that the lands stated to be included within the description of the grant were not the lands of North Carolina, but of the United States, and that (273) such fraud as is in the indictment supposed is subject to the cognizance of the Courts of the United States, and consequently not of any Court in this State. J. HAYWOOD.
As our opinions rest upon a few plain and obvious principles, it is unnecessary to enter into an elaborate examination of the cases cited in support of this motion. They are, generally speaking, good law (though to this the case cited from 1 Dyer, 69, forms an exception), but we do not think they apply to the case under consideration.
With respect to all those reasons which proceed upon the ground that the expressions "good and lawful men" are inserted in the caption and commission, instead of the word "freeholders," the answer is, that these words are to be understood according to the subject matter relative to which they are applied. In this instance, the words are used as forming an inquest; and an inquest formed of good and lawful men must be of freeholders. Liberos et legales homines are the terms which have always been used in the venire facias, and their legal import and signification is freeholders, without just exception. 3 Bl. Com., 351; 4 Bl. Com., 350. But even an objection to the caption of an indictment, founded in the omission of such words, ought not to prevail, especially if the indictment be in a Superior Court, and that which is omitted be in common understanding, implied in what is expressed. 2 Haw., cap. 25, sec. 126.
The exception arising from the supposed error in setting out the commission is not founded in point of fact, and has, therefore, been abandoned in the argument.
It is certainly an undeniable rule that the place where an offense is stated to have been committed must appear to be within the jurisdiction of the Court which tried it; and the question for us to decide is whether *Page 233 
the county of Greene does not appear to be within the jurisdiction of this Court? This Court is authorized by the commission to inquire into any offenses it describes which were committed within any district of the State; the county of Greene is within a district of the State, (274) and hence it necessarily follows that it is also within the jurisdiction of this Court. The civil divisions of the territory of the State into districts, and their subdivision into counties, serve to define and limit the boundaries of jurisdiction allotted to the Superior Courts; in this respect they form an essential part of the public law of which the Court can no more be ignorant than of the fact that every county in the State is within some one of its districts. Hence, if an offense is laid to be committed in a county corresponding in name with one in the State, we must, in reference to the extended jurisdiction of this Court, understand it to be one and the same. Would it not be fanciful and extravagant to presume it to be out of the State? And why make the presumption that it has been ceded to Congress when we know the fact is otherwise? Besides, the offense is laid to have been committed by the Secretary of State, being there (in the county of Greene) in the exercise of the said office; here, again, in order to give effect to this objection, we must make another unreasonable presumption, that the Secretary of State was exercising his office, and did issue from his office out of the State this military land warrant. But, in truth, if it had appeared on the trial that the offense was committed without the limits of the State, the defendant would have been discharged for want of jurisdiction. But if the place laid is within the jurisdiction of the Court, a mistake in that point would not have been material, unless the place had formed a part of the description of the offense, and was not stated merely as a venue. 4 Bl. Com., 306. In fine, the reasoning upon which all the cases are founded, which were cited to prove the necessity of naming the ville, is obviously inapplicable to the present topic, because the jury are summoned altogether from other counties than that where the offense is laid to have been committed. As to the objections made to the first court, it is to be remarked that the gist of the offense there stated is the fraudulently issuing a duplicate warrant, knowing the original to have been previously issued. We do not think it necessary that a positive (275) allegation should have been made that the original was issued, but it was necessary that proof to that effect should have been made on the trial, and it accordingly was made. In principle, the same objection was made in Rex v. Lauby, 2 Str., 904, and overruled. If a positive averment of the issuing the original warrant was unnecessary, it follows that the objection growing out of its not being particularly described must also be invalid. *Page 234 
It is further objected that no injury is stated to have ensued the act of thus issuing the duplicate.
If the act was done in the manner charged in the indictment, and as the jury have found it, the defendant has certainly committed a misdemeanor, which is indictable at common law. No rule of law requires that a circumstance which forms no ingredient in the crime should be stated in the indictment; and if a public officer, intrusted with definite powers to be exercised for the benefit of the community, wickedly abuses or fraudulently exceeds them, he is punishable by indictment, although no injurious effect results to an individual from his misconduct. The crime consists in the public example, in perverting those powers to the purpose of fraud and wrong, which were committed to him as instruments of benefit to the citizens, and of safety to their rights. If to constitute an indictable misdemeanor a positive injury to an individual must be stated and proved, all those cases must be blotted out of the penal code where attempts and conspiracies have been so prosecuted; yet they are numerous and authoritative. 3 Bac., 549, in notes, new edition.
The offense charged in the second count, succinctly stated, is this, that the defendant issued a grant to Mulherrin upon a duplicate warrant, which had been previously issued to the heirs of E. Roberts, the right to which Mulherrin claimed under an assignment from Elijah Robertson. In order to fix this as a fraudulent act upon the defendant, it is deemed necessary by the drawer of the indictment to describe the agency that Mulherrin had in the business; accordingly, the count begins with (276) stating the steps taken by him in order to obtain the grant, pretending that Robertson had assigned the warrant to him, although he did not produce any legal evidence to prove either Robertson's title or his assignment; and the offense as laid consists in issuing the grant under all the circumstances of the application made by Robertson, and with a full knowledge of them. These are therefore repeated in the second branch of the count, and introduced by the participle "knowing," which necessarily refers to the whole of them, and carries the sense throughout the whole paragraph which contains the recital of Mulherrin's acts or omissions. The sense of the whole count aids the construction, and unless the former is separated from the latter part of it, it is understood, upon reading, thus — that the defendant, well knowing that the duplicate was illegal, etc., well knowing that Mulherrin had not produced to him any legal evidence to prove that E. Robertson was entitled, etc., or to prove that he had assigned it to Mulherrin, fraudulently issued the grant, etc. *Page 235 
The four following objections to the second count have been substantially answered in noticing the exceptions to the first. What concerns the essence of the crime and the gist of the charge is laid with certainty sufficient to enable the defendant to know the offense wherewith he is charged, and to enable the Court to discern upon the record a crime punishable by law. In misdemeanors, where no particular technical phrases are appropriated to describe the act, nice and overstrained exceptions have not usually prevailed. 2 and 3 Bur. Rep. The last reason is founded upon the supposition that the lands stated to be included within the description of the grant were not the lands of North Carolina, but of the United States, and it is thence concluded that the fraud is exclusively cognizable in the courts of the United States. However the fact may be as to the title of the lands, the defendant was a public officer of the State of North Carolina, and it was by virtue of that character alone that he was enabled to commit the offense charged in the indictment. All his acts wore the semblance of official duties, and but for the inquiry now instituted might still retain the stamp of public (277) authenticity. By his signature the faith of the State was pledged for the purity and honesty of the documents to which it was annexed, and here character, honor, and dignity required that it should never be pledged in vain. The security of the citizens' rights, no less than the reputation of the State, was intimately connected with a faithful discharge of the duties appertaining to an office of such high importance; a confidence commensurate therewith was reposed in him, and this, after patient examination, is found by the jury to have been abused in the particulars charged. To the jurisdiction of the State, therefore, we think he is strictly and properly amenable.
Reasons overruled.
Cited: State v. Snuggs, 85 N.C. 544; Carr v. Coke, 116 N.C. 247.